# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 20-293-07 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| SERINA KHAN | MAGISTRATE JUDGE HORNSBY |

## <u>MEMORANDUM RULING</u>

Before the Court is a motion for sentence reduction under 18 U.S.C. § 3582(c)(1)(A), supplemental responses, and various filings requesting a status update filed by Defendant Serina Khan ("Khan").[1] *See* Record Documents 424, 437, 438, 450, 458, 460, & 464. Khan contends extraordinary and compelling circumstances warrant relief. *See* Record Document 424. The Government filed an opposition to which Khan filed a reply. *See* Record Documents 461 & 462.

For the reasons set forth below, Khan's motion for a reduction of sentence [Record Document 424] is **GRANTED**. Khan's motions for status updates [Record Documents 438 & 450] are **DENIED AS MOOT** in light of the Court's order regarding her motion for a reduction of sentence.

---

[1] The Court previously flagged Khan's case for potential relief under Amendment 821. *See* Record Document 452. Although Khan received a one-point reduction in her criminal history score because of these amendments, her criminal history category remains a VI, and her guideline range is unchanged. Thus, she is ineligible for relief under Amendment 821, and any motion related to that claim is **DENIED**. The Court has consequently limited its analysis in this motion to consideration of the claims expressly raised by Khan.

## Background

Khan's conviction arose from a Drug Enforcement Agency ("DEA") investigation into a conspiracy to distribute and to possess with the intent to distribute methamphetamine, which is a Schedule II controlled substance. *See* Record Document 307-2 at 1. To investigate this conspiracy, the DEA wiretapped the phone of Demetrius Loston ("Demetrius"), one of Khan's co-defendants. *Id*. On October 10, October 22, October 23, November 11, November 13, and November 21, 2020, DEA agents intercepted calls between Khan and Demetrius. *Id*. at 1-2. During each of these calls, Khan arranged to meet with Demetrius at a gas station to purchase one ounce of methamphetamine. *Id*. Agents observed Khan meet Demetrius at the gas station following these phone calls. *Id*. On November 16, 2020, DEA agents intercepted another call between Khan and Demetrius, after which Demetrius called Djavious Evans ("Evans") to deliver the ounce of methamphetamine to Khan. *Id*. at 2.

On December 2, 2020, agents interviewed Khan. *Id*. After receiving her *Miranda* rights, Khan informed the agents that, since May 2020, she had been buying an ounce of methamphetamine at a time for $650 from either Demetrius or Evans. *Id*. She also stated that, for the past few weeks, she had purchased a couple of ounces per week. *Id*.

On February 26, 2021, a federal grand jury indicted Khan on one count of conspiracy to distribute and to possess with the intent to distribute over 50 grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), 846. *See* Record Document 64. On March 4, 2022, Khan pleaded guilty. *See* Record Documents 305 & 307. Because the conspiracy involved over 50 grams of methamphetamine, Khan was

subject to a minimum term of imprisonment of ten years.[2] *See* 21 U.S.C. §§ 841(b)(1)(A)(viii), 846. On August 18, 2022, the Court sentenced Khan to 120 months imprisonment and 5 years of supervised release. *See* Record Document 398.

On November 13, 2023, Khan filed the instant motion for compassionate release. *See* Record Document 424. Khan asserts three extraordinary and compelling circumstances warrant relief. *See id.* at 5. First, she alleges she is the only available caregiver for her incapacitated mother. *See* Record Document 424-1 at 1-2. Second, she alleges she has rehabilitated herself during her incarceration. *See id.* at 2-3. Third, she alleges a sentencing disparity exists because her co-defendant, Sean Loston ("Sean"), received a lower sentence than her. *See id.* at 3. The Government opposes this motion, arguing Khan has not shown the existence of an extraordinary and compelling circumstance. *See* Record Document 461.

## Law & Analysis

### I.      18 U.S.C. § 3582(c)(1)(A)

While a court generally "may not modify a term of imprisonment once it has been imposed," several exceptions to this principle of finality exist. 18 U.S.C. § 3582(c). Relevant here, a court may reduce an inmate's sentence when the inmate demonstrates that "extraordinary and compelling reasons" justify a sentence reduction. 18 U.S.C. §

---

[2] That mere fact that Khan received a mandatory minimum does not, by itself, prevent the Court from exercising its discretion under § 3582(c)(1)(A) to reduce her sentence. *See United States v. Lebaron*, No. 92-177-05, 2023 WL 7308116, at *5 (S.D. Tex. Nov. 6, 2023) ("Although the defendant also received a mandatory life sentence . . . , courts are authorized to reduce a statutory mandatory minimum under § 3582(c)(1)(A).").

3582(c)(1)(A)(i). The inmate bears the burden of showing why a reduction is justified. *See United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D. La. 2020).

Before an inmate can petition for § 3582 relief from the district court, the inmate must first exhaust her administrative remedies. *See* 18 U.S.C. § 3582(c)(1)(A). Relief is justified where an inmate can demonstrate the existence of a condition identified in § 3582(c)(1)(A) (e.g., extraordinary and compelling circumstances), "show that compassionate release is consistent with applicable policy statements from the Commission[,]" and "convince the district judge to exercise discretion to grant the motion after considering the § 3553(a) factors." *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021).

### A. Exhaustion of Administrative Remedies

Historically, only the Director of the Bureau of Prisons ("BOP") could file a motion to reduce an inmate's sentence. *See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5193, 5239. After the First Step Act of 2018, however, a court may consider compassionate release motions filed directly by inmates. *See* 18 U.S.C. § 3582(c)(1)(A). But before an inmate pursues compassionate release through a district court, she must first exhaust all administrative remedies or wait for a lapse of thirty days from the time the warden receives her request. *See id.*

The district court can only modify a sentence after the defendant has exhausted administrative remedies. *See id.* This mandatory language includes no exceptions, equitable or otherwise. *See Martinez-Guevara v. Garland*, 27 F.4th 353, 361 (5th Cir. 2022) (citing *Ross v. Blake*, 578 U.S. 632, 639 (2016)) ("Mandatory exhaustion regimes

brook no exceptions."); *United States v. Alam*, 960 F.3d 831, 834 (6th Cir. 2020) ("Nothing in § 3582(c)(1)(A) suggests the possibility of judge-made exceptions."). Generally, "to exhaust her administrative remedies, a prisoner must first present to the BOP the same grounds warranting release that the prisoner urges in her motion." *United States v. Dodd*, No. 13-182, 2020 WL 7396527, at *2 (E.D. Tex. Dec. 17, 2020). The Court may only consider Khan's motion if she satisfied the aforementioned exhaustion requirement.

Khan satisfied the exhaustion requirement here. She filed her request for compassionate release to the warden at FCI Aliceville on February 25, 2023.[3] *See* Record Document 424-2 at 4. The warden denied her request on September 28, 2023. *See* Record Document 461-1 at 2. Because Khan first sought relief from the BOP on the same grounds, she satisfied the exhaustion requirement, and the Court may consider the merits of her motion.

### B. Extraordinary and Compelling Circumstances

To assist courts in deciding § 3582 motions, the Sentencing Commission promulgated guidance on what constitutes an extraordinary and compelling circumstance. On November 1, 2006, the Sentencing Commission issued a policy

---

[3] At some point after Khan filed her motion with the Court, she was transferred to FCC Marianna. *See* Record Documents 437 at 2-3 (wherein Khan states she is "now . . . in a prison camp" and includes Marianna, Florida in her signature line) & 460 at 1 (referencing her transfer to FCC Marianna). On November 26, 2024, Khan filed another request for compassionate release with the warden at FCC Marianna, and this request was denied on December 3, 2024. *See* Record Document 460 at 3-4. Khan informed the Court of the status of this request on December 26, 2024. *See id.* at 1. Khan's second request raised the same concerns asserted in her initial motion. The Government does not contest that Khan satisfied the exhaustion requirement. *See* Record Document 461 at 4.

statement outlining four categories of extraordinary and compelling circumstances: (1) defendant's medical condition; (2) defendant's age; (3) family circumstances; or (4) other reasons. *See* U.S.S.G. § 1B1.13 cmt. 1 (effective Nov. 1, 2006); *United States v. Jean*, 108 F.4th 275, 277-79 (5th Cir. 2024) (providing a historical background for compassionate release motions). Although not binding, these four categories helped district courts determine whether a sentence reduction was warranted under § 3582(c)(1)(A). *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021); *Shkambi*, 993 F.3d at 393.

Until November 1, 2023, the Sentencing Commission had not issued guidance for prisoner motions brought under the First Step Act. *See Jean*, 108 F.4th at 278-79. Because the Sentencing Commission had not issued that guidance, "what constituted extraordinary and compelling reasons for motions brought by criminal defendants was left to the broad discretion of the district courts." *Id.* at 279. However, the Sentencing Commission issued new amendments to the Sentencing Guidelines that went into effect on November 1, 2023. *See id.*; U.S.S.G. § 1B1.13 (effective Nov. 1, 2023). Unlike the previous guidance issued by the Sentencing Commission, this guidance explicitly applies to prisoner-brought motions, meaning any court-ordered reduction must be consistent with the now-applicable policy statement. *See* U.S.S.G. § 1B1.13(a); 18 U.S.C. § 3582(c)(1)(A); *United States v. Wedgeworth*, No. 18-87-(08), 2024 WL 4988370, at *3 (E.D. Tex. Dec. 4, 2024) (explaining that the new amendment extended the applicability of the policy statement to prisoner-brought motions).

6

Importantly, the 2023 amendment expanded the circumstances that are considered extraordinary and compelling, which now include six categories: (1) defendant's medical condition, (2) defendant's age, (3) defendant's family circumstances, (4) whether defendant has been a victim of abuse during custody, (5) other reasons, and (6) an unusually long sentence. *See* U.S.S.G. § 1B1.13(b); *United States v. Vazquez*, No. 24-10012, 2024 WL 4326542, at *1 (5th Cir. Sept. 27, 2024) (per curiam) (stating that the amendment "to the Sentencing Guidelines . . . expanded the list of extraordinary and compelling reasons upon which compassionate release may be based.").[4]

In her motion, Khan asserts three allegedly extraordinary and compelling circumstances: (1) the incapacitation of her mother, Deborah Khan ("Mrs. Khan"), (2) her rehabilitation,[5] and (3) the sentencing disparity between her and Sean's sentences.[6] *See*

---

[4] This Court understands the revised Sentencing Guidelines apply to this motion. *See Jean*, 108 F.4th at 279, n.4 ("For motions brought after November 1, 2023, the Sentencing Commission's November 1, 2023 Amendments will provide the starting point.").

[5] Rehabilitation "is not, by itself, an extraordinary and compelling reason." U.S.S.G. § 1B1.13(d). As such, the Court will consider rehabilitation only "in combination with other circumstances in determining whether and to what extent a reduction" is warranted in Khan's case. U.S.S.G. § 1B1.13(d).

[6] The Sentencing Guidelines provide that a "gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed" may constitute an extraordinary and compelling circumstance. U.S.S.G. § 1B1.13(b)(6). However, the Guidelines do not suggest relief is available when a disparity exists between a defendant's sentence and the sentences of other defendants convicted of the same crimes. That is the argument Khan makes here. Although the revised Guidelines permit courts to consider "other reasons" a sentence reduction might be justified, *see* U.S.S.G. § 1B1.13(b)(5), the sentencing disparity between Khan's and Sean's sentences is not similar in gravity to those enumerated circumstances. Thus, that Khan received a longer sentence than Sean is not an extraordinary and compelling circumstance warranting a sentencing reduction.

Record Document 424. Only Mrs. Khan's alleged incapacitation expressly falls within the enumerated categories of extraordinary and compelling circumstances. *See* U.S.S.G. § 1B1.13(b)(3)(C). Thus, that is where the Court will begin.

The Sentencing Guidelines now expressly allow for a sentence reduction where the defendant demonstrates "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent." U.S.S.G. § 1B1.13(b)(3)(C). Neither the Sentencing Commission nor the BOP have issued guidance as to the definition of "incapacitation" for a defendant's parents. However, the BOP previously defined "incapacitation" for an inmate's spouse or registered partner to mean that the spouse or registered partner has:

> Suffered a serious injury, or a debilitating physical illness and the result of the injury or illness is that the spouse or registered partner is completely disabled, meaning that the spouse or registered partner cannot carry on any self-care and is totally confined to a bed or chair; or

> A severe cognitive deficit (e.g., Alzheimer's disease or traumatic brain injury that has severely affected the spouse's or registered partner's mental capacity or function), but may not be confined to a bed or chair.

*See* Federal Bureau of Prisons, *Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g)* (Jan. 17, 2019), https://www.bop.gov/policy/progstat/5050_050_EN.pdf. The Court finds this definition instructive for determining whether an inmate's parent is incapacitated. *See United States v. Lewis*, No. 14-148, 2024 WL 4827378, at *3 (E.D. La. Nov. 19, 2024) (applying this definition to determine if a defendant's parent was incapacitated). For relief to be justified on this ground, Khan must establish both that her parent is incapacitated and that she is the only available caregiver for said parent. *See id.* at *2.

First, Khan has demonstrated her mother is incapacitated.[7] Mrs. Khan suffers from several severe illnesses, including stage three chronic obstructive pulmonary disease,[8] degenerative arthritis, heart disease, and lung disease. *See* Record Documents 424-3 at 4 & 424-4 at 3 and 8. Khan asserts her mother "is completely immobile, bedridden, and dependent on 24-hour oxygen." Record Document 466 at 1. Dr. Kirk Saucier, M.D., opines Mrs. Khan's illnesses have left her so "physically debilitated, . . . she is no longer able to care for herself adequately." Record Document 424-4 at 3. Letters from Mrs. Khan's previous direct service provider for in-home care and a representative of the organization responsible for providing in-home care to Mrs. Khan likewise indicate Mrs. Khan's health has "declined dramatically[,]" and she "now needs 24-hour care." Record Documents 424-3 at 1-3. Mrs. Khan submits she "need[s] care around the clock" and is "currently bed ridden." *Id.* at 4. Finally, Mrs. Khan's niece stated Mrs. Khan is unable to "walk without assistance, and relies on others for even the most basic daily tasks." Record Document 462-1 at 2.

Both the medical records and these letters demonstrate Mrs. Khan is unable to care for herself, needs 24-hour care, and is immobile without assistance. Thus, the Court finds Mrs. Khan is incapacitated. *See United States v. Hernandez*, No. 16-20091, 2020 WL 4343991, at *1 (S.D. Fla. Apr. 3, 2020) (granting compassionate release motion

---

[7] The Government seemingly does not contest the extent of Mrs. Khan's disability. Instead, the Government's opposition focuses on whether Khan is the only available caregiver for her mother. *See* Record Document 461 at 4-5.

[8] Khan has recently represented that Ms. Khan now suffers from Stage Four chronic obstructive pulmonary disease, but she has not provided medical records to substantiate that diagnosis. *See* Record Document 466.

where defendant's mother was functionally blind and required frequent eye injections, had recently entered remission from cancer, and suffered from severe atherosclerosis and mobility limitations).

Second, Khan has demonstrated she is the only available caregiver for Mrs. Khan. The Court acknowledges Mrs. Khan's insurer provides care for approximately 32 hours each week. *See* Record Documents 424-1 at 1-2. However, the record establishes Mrs. Khan needs 24-hour care, that is, 168 total hours of care each week. *See* Record Documents 424-3 & 424-4 at 3. Even with in-home care assistance for 32 hours a week, Mrs. Khan is still without consistent care for 136 hours each week. This means that for 136 hours each week, she is without any form of care as she is unable to care for herself.

Currently, Jacob Gates ("Gates"), Ms. Khan's grandson, is assigned to work at Ms. Khan's residence for 22 hours a week through his job as a caregiver.[9] *See* Record Document 466 at 2 & 466-1 at 1-2. However, Gates works 30 hours a week as a caregiver for another individual, takes care of his siblings, and will soon be starting nursing school in a different city. *See* Record Document 466-1 at 1-2. While it is unclear whether Ms. Khan receives an additional 10 hours of care through her insurance, the fact remains that she is still, at a minimum, without consistent care for 136 hours each week.

The Government posits Khan is not the only available caregiver because Mrs. Khan has family and friends who "drop by to check on her." Record Document 461 at 5 (internal

---

[9] On March 7, 2025, the Court ordered Khan to respond to information it had received from probation regarding Gates. *See* Record Document 465. Khan clarified that Gates does not live, either parttime or fulltime, at Ms. Khan's residence, and she provided additional information about his inability to provide fulltime care. *See* Record Document 466. The Government did not respond to Khan's representations.

quotation marks omitted). The Court does not agree. The Government's argument disregards the extreme level of care Mrs. Khan needs. Although these individuals may be able to occasionally visit Mrs. Khan, the evidence shows they cannot serve as fulltime caregivers.

Mrs. Khan has three siblings, but the letters submitted by Khan and others indicate that these siblings are, like Mrs. Khan, suffering from severe health issues of their own. *See* Record Documents 424-1 at 1, 424-3 at 4, & 462-1. Additionally, the pre-sentence investigation report indicates Khan has a brother but that he is in federal custody.[10] *See* Record Document 404 ¶ 106. Mrs. Khan's niece lives far from Mrs. Khan and has familial responsibilities that keep her from moving closer or providing consistent care. *See* Record Document 462-1 at 2.

In sum, the evidence submitted by Khan demonstrates that, even if Mrs. Khan does have people who may be able to visit her or care for her temporarily, she has no one who can provide the level of consistent or reliable care required because of their own poor health, distance from Mrs. Khan, or other extenuating circumstances. Indeed, because of the lack of consistent care, Mrs. Khan has fallen on several occasions, resulting in a fractured wrist and blackened eyes, and she has required the assistance of the local fire department to help her get up. *See* Record Document 424-1 at 2.

Khan appears to be the only individual capable of actively providing the level of care Mrs. Khan needs. As such, Khan is the only available caregiver for Mrs. Khan. *See United States v. Barnes*, No. 17-00011, 2021 WL 1269783, at *4 (S.D. Ind. Jan. 29, 2021)

---

[10] Khan's brother is also not related to Mrs. Khan. *See* Record Document 424-1 at 2.

(finding the defendant was the only available caregiver because the only other potential caregivers did not have "the ability or willingness to provide the 24-hour care" required for the incapacitated child). Thus, the Court finds Khan has established that the incapacitation of her mother is an extraordinary and compelling circumstance justifying relief under § 3582(c)(1)(A)(i).

Further, although rehabilitation is not itself an extraordinary and compelling circumstance, the Court finds it apt to consider Khan's rehabilitation at this juncture. Rehabilitation "may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." U.S.S.G. § 1B1.13(d). Because the Court found Mrs. Khan's incapacitation justifies relief, the Court may properly consider Khan's rehabilitation to determine if and to what extent a reduction is warranted.

Here, Khan's rehabilitation supports a sentence reduction. Since her incarceration, Khan has maintained a clean disciplinary record. *See* Record Documents 424-2 at 1 & 437-1 at 12. She has completed several programs, including drug education, healthy balanced lifestyle, women's aging: aging well, square one, ServSafe, budgeting, business classes, religion classes, and a substance abuse and addictions program. *See* Record Documents 424-2 at 16-23 & 437-1 at 1-7. She regularly attends Alcoholics Anonymous meetings, Narcotics Anonymous meetings, and church. *See* Record Document 424-1 at 2. Additionally, Khan works with UNICOR—a government program designed to help prisoners "learn[] the skills necessary to successfully transition from convicted criminals

to . . . law-abiding, contributing members of society" [11]—where she received employee of the month on at least one occasion. *See* Record Documents 424-1 at 2, 424-2 at 1, & 437-1 at 3. Finally, Khan has been transferred to FCI Marianna Camp, a minimum-security satellite camp. *See* Record Document 462.

Taken together, this evidence suggests Khan has taken substantial strides to rehabilitate herself in advance of her release. When considered alongside her mother's incapacitation, the Court finds Khan is eligible for a sentence reduction subject to the Court's consideration of the § 3553(a) factors and any applicable policy statement.

### C. Consideration of 18 U.S.C. § 3553(a) Factors and Applicable Policy Statement

Before granting relief under § 3582(c)(1)(A), the Court must consider the factors enumerated in § 3553(a) to the extent they are applicable. *See* 18 U.S.C. § 3582(c)(1)(A). These factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > (B) to afford adequate deterrence to criminal conduct;
> > (C) to protect the public from further crimes of the defendant; and
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for--
> > (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .
> (5) any pertinent policy statement--

---

[11] *See* Federal Bureau of Prisons, *UNICOR*, https://www.bop.gov/inmates/custody_and_care/unicor.jsp#:~:text=UNICOR%20is%20the%20trade%20name,quality%20goods%20made%20by%20inmates.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)(1)-(7). Upon careful consideration, the Court finds the factors weigh in favor of a reduction in Khan's case.

Most notably, the nature and circumstances of the offense and personal characteristics of the defendant weigh heavily in favor of a sentence reduction. Compared to her co-defendants, Khan played a minor role in the conspiracy. *See* Record Document 404 ¶ 72. Khan's involvement stemmed primarily from her routine purchases of one ounce of methamphetamine. *See id.* ¶¶ 43 and 63. Khan submits she purchased these drugs because she suffered with substance abuse. *See* Record Document 424-1 at 3. However, since being incarcerated, Khan has taken substantial strides in her recovery. *See id.* at 2-3. As discussed *supra*, Khan has completed substance abuse programs. Additionally, she has received a job offer to work at an addiction treatment center. *See* Record Document 424-5 at 2. If released from prison, she plans to accept the position with that treatment center and complete her education to become a drug addiction specialist. *See id.* at 7. Khan's actions demonstrate a striking commitment to recovery, and the Court finds these actions, especially when viewed in conjunction with her minor role in the conspiracy, weigh in favor of a sentence reduction.[12]

---

[12] The Court acknowledges Khan was subject to a mandatory minimum of ten years. To date, Khan has served less than half of her sentence. However, because of Khan's role in the conspiracy and her other pertinent characteristics, the Court finds any resulting sentence disparity between Khan and defendants convicted of the same offense is warranted. For those same reasons, the Court finds that an appropriate reduction, as discussed *infra*, addresses any remaining concerns regarding just punishment or sentence disparity.

Any reduction ordered by a court must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The applicable policy statement, U.S.S.G. § 1B1.13, requires the Court ensure "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."[13] U.S.S.G. § 1B1.13(a)(2). The factors enumerated in § 3142(g) are somewhat similar to the § 3553(a) factors and include:

> (1) the nature and circumstances of the offense charged, . . . ;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including—
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . .

18 U.S.C. § 3142(g)(1)-(4). These factors, too, weigh in Khan's favor.

As explained in-depth *supra*, the nature and circumstances of the offense weigh in Khan's favor because her role in the conspiracy was minor and non-violent. As to her personal history and characteristics, since her incarceration, Khan has worked hard to

---

[13] In sum, the policy statement requires the Court find that (1) either "[e]xtraordinary and compelling reasons warrant the reduction" or defendant is both at least 70 years old and has served at least 30 years of the imposed sentence; (2) "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and (3) "[t]he reduction is consistent with this policy statement." U.S.S.G. § 1B1.13(1)-(3). As discussed *supra*, the Court has already found the existence of extraordinary and compelling circumstances. The Court has also taken great care to ensure its order is consistent with this policy statement.

rehabilitate herself, most notably by entering recovery, participating in multiple prison programs, and making plans upon release that will only further support her sobriety. Additionally, the Court finds that the nature and seriousness of the danger to any person or the community posed by Khan's release weighs in her favor. At the time of her involvement in the conspiracy and subsequent conviction, Khan suffered from substance abuse, and she maintains that this substance abuse entangled her in the conspiracy. Now that Khan has worked to achieve sobriety and has made plans to ensure she will remain sober outside of prison, any danger posed to the community is minimal. Therefore, the Court finds Khan does not present a danger to the public or the community and that a reduction would be consistent with the policy statement. As such, Khan is entitled to relief under § 3582(c)(1)(A).

### D. Appropriate Relief

Because the Court has found relief is warranted, the Court must determine what relief is appropriate. Mrs. Khan needs immediate care because of her current incapacitation. Reducing Khan's sentence to time served best addresses Khan's extraordinary and compelling circumstance. This reduction is further supported by Khan's rehabilitation throughout her incarceration.

The Court is cautious that any relief it orders should be in accordance with the policy statement and the § 3553(a) factors. Therefore, to further promote a just punishment and to limit any potential sentence disparity, the Court finds it appropriate to extend Khan's supervised release to account for her remaining term of imprisonment.

This extension will ensure not only that her mother receives the in-home care she needs but also that Khan serves the mandated length of punishment in some fashion.

## **Conclusion**

Having considered the motion for sentence reduction under 18 U.S.C. § 3582(c)(1)(A) [Record Document 424] and reply [Record Document 462] filed by Khan, the opposition [Record Document 461] filed by the Government, the factors set forth in 18 U.S.C. § 3553(a), and applicable policy statements, Khan's motion for sentence reduction is **GRANTED** due to the existence of extraordinary and compelling circumstances warranting relief. Accordingly,

**IT IS ORDERED** that Khan's sentence of imprisonment be **REDUCED TO TIME-SERVED**.

**IT IS FURTHER ORDERED** that Khan's supervised release be **EXTENDED** by what would have otherwise been the remainder of her term of imprisonment.

**IT IS FURTHER ORDERED** that, while on supervised release, Khan shall abide by the mandatory and standard conditions of supervised release that have been adopted by the Court [Record Document 398].

**IT IS FURTHER ORDERED** that Khan's motions for status updates [Record Documents 438 & 450] are **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that any motions related to claims under Amendment 821 are **DENIED** in light of the Court's determination that Khan is ineligible for relief under that amendment.

Execution of the Court's order is **STAYED** until **May 23, 2025**, to allow the Bureau of Prisons and the United States Probation Office the opportunity to arrange for Khan's release.

An amended judgment consistent with this Memorandum Ruling will be entered separately to reflect the amended sentence and to set forth all conditions of supervision that will apply to Khan.

The Clerk of Court is directed to provide a copy of this ruling to the United States Probation Office and FCC Marianna.

**THUS DONE AND SIGNED** this 9th day of May, 2025.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE